# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

McElheny et al. *v.* Pittsb. etc. Ry. Co., Appellant.

*Evidence—Cross-examination.*

When, upon the cross-examination of a witness, the opposite party has introduced a subject germane to the issue on trial, and has elicited some facts respecting it, the party calling the witness may, upon redirect examination, follow it up by inquiring for further facts explanatory of those so elicited, even though it might not have been competent to prove them upon the examination in chief.

Argued Nov. 4, 1891. Appeal, No. 258, Oct. T., 1891, by defendant from judgment of C. P. No. 2, Allegheny Co., April T., 1890, No. 131, on verdict for plaintiff. Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

On Jan. 18, 1890, viewers were appointed to assess damages for the appropriation by the Pittsburgh, Virginia & Charleston Railway Company, of certain lands belonging to V. K. McElheny and others. The viewers having made an award, the plaintiff appealed therefrom, and an issue was framed in the usual form to determine what compensation the plaintiffs were entitled to receive.

At the trial on May 6, 1891, the following facts were shown:

The plaintiffs were the owners of a tract of land fronting on the Monongahela river. In 1872, the defendant company acquired a right of way through said tract, sixty feet wide,

upon which it constructed its railroad. The ground belonging to the plaintiffs, left between the railroad and the river, was divided into two parts by an intervening piece of land owned by another person.

In Nov., 1889, as it was stated, the McKeesport & Duquesne Highway Bridge Company appropriated a right of way across one of the said parcels belonging to the plaintiffs, for the construction thereon of a part of a bridge, to cross the Monongahela river and connect the city of McKeesport, on the east bank, and the village of Duquesne, near the plaintiffs' property, on the west side of the river. There was a condemnation proceeding in which the plaintiffs were awarded damages for the appropriation so made by the bridge company. Subsequently, the bridge was constructed upon that right of way, at an elevation of from thirty to fifty feet above the surface of plaintiffs' land. The date of its construction did not appear in the extract from the testimony printed in the paper-books.

On Jan. 1, 1890, the defendant company appropriated, for the purpose of constructing freight yards, etc., both pieces of the land of plaintiffs between the railroad and the river, subject to the prior appropriation made by the bridge company. W. C. McElheny, one of the plaintiffs, having testified as to the availability for manufacturing purposes, or for the purpose of laying out building lots, of the ground appropriated by the railway company, was cross-examined in part as follows:

"Q. How high above the narrow level of this ground is that bridge built? A. About fifty feet, I should say. . . . Q. If you utilize that for building lots, how would you cut it up so as to utilize it for building purposes? A. Why we could run a street down through the middle of that ravine, and lay off building lots on either side of the ravine; from the ravine down, we could lay off a street. There is a road or street from the ravine down to the ferry landing now. We could run a street off at about right angles to that road, down through the middle of it, and lay off building lots. . . . Q. In laying out a road for this lower part of this property, what would you connect it with? A. With this road. (Shows.) Q. You run it underneath the highway bridge? A. Yes, sir; plenty of room. Q. And connect it with that? A. Yes, sir. Q. There would be no way of getting on to that highway bridge on this

property, without crossing the railroad on high ground to get on to the far edge of the bridge? A. No, sir. Q. How far beyond this property is the approach to the highway bridge? A. It is about, probably, one hundred feet across to the approach of the bridge. Q. About one hundred feet beyond the railroad, you mean? A. No, sir; from the property."

On redirect examination, the witness was asked: " Q. Mr. Gordon had asked you about this highway bridge being above the present railroad track, and being laid out before the railroad company went there. Where was it originally located in this tract?"

Objected to.

Plaintiffs' counsel proposes to show that the highway bridge, as originally located, was very nearly down on this property, and of easy access to the property; to be followed, if answered, by proof to show that it was by an arrangement with the railroad company, for their own convenience, that.it was raised up high.

Objected to as irrelevant.

By the Court: In order to avoid confusion, in view of what was elicited by the cross-examination we allow the question to be answered and overrule the objection; exception. [1]

" A. It was originally located at the grade crossing the Pittsburgh, Virginia & Charleston track. Q. How high would that have been above your property as it approached the river? A. I could not tell you in so many feet, but I suppose a half a dozen feet, or something like that, along here below the grade of the railroad. Q. At the bank of the river, how high would that bridge have been located? A. At the bank of the river it would have been about twenty feet."

Re-cross-examination: " Q. How do you know what elevation that bridge was? Cannot it be built out? A. Why, when they came there to condemn it they told us where they would run their bridge. Q. And was not the bridge out in the river kept just as high finally; down at the end of your property next to the river the bridge is the same height as spoken of then, is it not? A. No, sir; I think they raised the piers ten to fifteen feet, in order to cross over your tracks above grade. Q. They did? A. Yes, sir; they raised the piers and. raised it that much higher. Q. And you think

the way it was constructed originally, you could have gotten
on to that bridge from your property? A. We could have
gotten on to it with easier access than we can at present.
Q. Didn't you testify before the viewers, in that case, that
your property was damaged five thousand dollars by the ap-
propriation of that bridge? A. I do not think I testified be-
fore the viewers at all." *

At the close of the testimony, the court, WHITE, P. J., 40th
district, specially presiding, submitted to the jury the question
of the market value of the property appropriated by the de-
fendant, the charge closing as follows:

You can ascertain what the market value of this property
was on the first of January, 1890, and you can compute inter-
est on it and add that to the amount you find for damages, and
in that way the plaintiff will get the benefit of it.

Mr. Gordon: And that would be the amount of damage
after the bridge appropriation.

By the Court: Certainly. We may remark to you, gentle-
men, that you will take the property just as it was at that time,
with the bridge, with the station, and with all the material sur-
rounding it.

Verdict and judgment for plaintiffs for $54,000. Defend-
ant appealed.

*Error assigned* was the admission of plaintiffs' offer. [1]

*George B. Gordon, William Scott* with him, for the ap-
pellant.

*John S. Ferguson, Isaac S. Van Voorhis* with him, for the
appellees.

---

* Only a part of the testimony was printed in the paper books, and that
did not exhibit the relative dates of the various occurrences mentioned in
the statement of facts. It was asserted in the argument for the appellees,
that the assessment of damages against the bridge company was made
before the bridge was constructed, and before the original plans of the
bridge, as described in the testimony of W. C. McElheny, were changed;
that the bridge was not constructed until after the defendant company
had made the appropriation of January 1, 1890, and the change of plan
by which, when actually constructed, it was elevated so as to cross the
defendants' tracts above grade, was made some time after that date.

PER CURIAM, January 4, 1892.

The single assignment of error is to the admission of evidence as to the location and height of the highway bridge. It is sufficient to say, in answer to this objection, that the subject was introduced by the appellant upon the cross-examination of the plaintiffs' witness. If we concede that it would not have been competent evidence in chief on the part of the plaintiffs, the defendant having brought it out, the plaintiffs were clearly entitled to follow it up by the questions referred to.

Judgment affirmed.                                    C.